**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PROCENTURY INSURANCE COMPANY,<br>        Plaintiff/<br>        Counterdefendant,<br>     v. | CIVIL NO. 08-5968(NLH)(KMW) |
| HARBOR HOUSE CLUB CONDOMINIUM<br>ASSOCIATION, INC.,<br>        Defendant/<br>        Third-Party Plaintiff/<br>        Counterclaimant, | **OPINION** |
| v. | |
| THOMAS H. HEIST INSURANCE<br>AGENCY, INC., MELISSA TOLAN,<br>COWLES & CONNELL, CENTURY<br>SURETY COMPANY, MEADOWBROOK<br>INSURANCE GROUP, INC.,<br>        Third-Party Defendants, | |
| THOMAS H. HEIST INSURANCE<br>AGENCY, INC., MELISSA TOLAN,<br>        Cross-claimants, | |
| v. | |
| COWLES & CONNELL, CENTURY<br>SURETY COMPANY, MEADOWBROOK<br>INSURANCE GROUP, INC.<br>        Cross-defendants. | |

**APPEARANCES:**

Robert M. Cavalier, Esquire
Lucas & Cavalier, Esqs.
126 White Horse Pike
Third Floor
Haddon Heights, NJ 08035
      *Attorney for Procentury Insurance Company, Cowles & Connell,*
      *Century Surety Company, Meadowbrook Insurance Group, Inc.*

Jonathan Wheeler, Esquire
Law Offices of Jonathan Wheeler
1617 JFK Boulevard
Suite 1270

One Penn Center
Philadelphia, PA 19103

Salvatore Perillo, Esquire
Nehmad Perillo & Davis, P.C.
P.O. Box 730
Somers Point, NJ 08244
     *Attorneys for Harbor House Club Condominium Association, Inc.*

Lars Stephen Hyberg, Esquire
Mcallister, Hyberg, White & Cohen, PC
Executive Plaza
2111 New Road
Suite 105
Northfield, NJ 08225
     *Attorney for Thomas H. Heist Insurance Agency, Inc. and
     Melissa Tolan*

**HILLMAN**, District Judge

     This matter involves an insurance coverage dispute concerning

storm damage to the wharves and piers appertinent to the Harbor

House condominiums in Ocean City, New Jersey.  Pending before the

Court are: (1) the motion of ProCentury Insurance Company

("ProCentury") to dismiss Harbor House Club Condominium

Association, Inc.'s ("Harbor House") counterclaim, (2) the cross-

motion of Harbor House to dismiss ProCentury's claims in admiralty

and for sanctions, (3) Cowles & Connell's motion to dismiss Harbor

House's third-party complaint, and (4) Century Surety Company and

Meadowbrook Insurance Group, Inc.'s motion to dismiss Harbor

House's third-party complaint and for sanctions.  All motions have

been opposed.  For the reasons expressed below, the motions of

ProCentury, Harbor House, and Century Surety and Meadowbrook will

be denied, and the motion of Cowles & Connell will be granted.

2

## BACKGROUND

On May 13, 2008 a storm damaged the wharves and piers[1] at the Harbor House condominiums in Ocean City, New Jersey.  That day, Harbor House filed a notice of claim under its Commercial Ocean Marine Insurance policy with ProCentury, which had an effective period of February 7, 2008 through May 1, 2009.  On November 8, 2008, Harbor House submitted a statement of proof of loss.  On December 5, 2008, ProCentury denied Harbor House's claim and refunded Harbor House its policy premium.  ProCentury denied Harbor House's claim and returned its premium because it found that Harbor House materially misrepresented the risk to be insured.

Specifically, ProCentury found that prior to offering a quote for the policy, it received a form application - a form of an unrelated insurance company, Great American Insurance Group - which included a representation that Harbor House did not contemplate any structural alterations or demolition during the proposed policy period.  Upon investigation following Harbor House's notice of claim, ProCentury found that as early as October 2007 and then again in February 2008, Harbor House's retained engineering firm

---

[1]A wharf is built along and parallel to the shore, while a pier runs out and away from or at a right angle to the shore.  A dock is the water next to a wharf or pier and it is not a solid thing.  A dock was first a natural hollow or creek where a ship could stay at low water.  Thesaurus.com. Roget's 21st Century Thesaurus, Third Edition. Philip Lief Group 2008. http://dictionary.classic.reference.com/browse/wharf (accessed: August 19, 2009).

corresponded with the Army Corps of Engineers regarding permit applications for the reconstruction of the breakwaters on all four piers.  Harbor House never informed ProCentury of its permit applications and proposed reconstruction, and on December 5, 2008, ProCentury determined that this constituted a material misrepresentation of the risk insured.  On that same day, ProCentury filed its declaratory judgment action with this Court, seeking a judgment declaring the insurance policy as fully rescinded/void *ab initio* and Harbor House's claim as properly denied.

Harbor House filed its answer on January 12, 2009, and asserted counterclaims against ProCentury.  Harbor House denies that it made a material representation to ProCentury.  Its counterclaim seeks a declaratory judgment in its favor declaring that ProCentury is obligated to pay its claim under the policy. Harbor House also asserts a counterclaim for breach of the duty of good faith and fair dealing.

Harbor House also filed a third-party complaint against Thomas H. Heist Insurance Agency ("Heist"), Melissa Tolan, Cowles & Connell, Century Surety Company, and Meadowbrook Insurance Group. Tolan is the insurance broker employed by Heist who submitted the Great American form to Cowles & Connell, ProCentury's agent, as part of the application for the ProCentury insurance policy.  The policy issued by ProCentury identifies the issuing carrier on the

4

declarations page for piers and wharves coverage as Century Surety Company, which appears on the record before us to be, like ProCentury, a subsidiary of ProCentury Group.  ProCentury Group is presumably a insurance holding company that operates insurance subsidiaries, in this case Century Surety and ProCentury.  On July 31, 2008, Meadowbrook acquired the ProCentury Group, along with its subsidiaries.  Harbor House's claims against Century Surety and Meadowbrook are for breach of the insurance contract and bad faith. Its claim against Heist, Tolan and Cowles & Connell is for negligence in obtaining the insurance policy.[2]

As set forth above, pending before the Court are: (1) the motion of ProCentury to dismiss Harbor House's counterclaim, (2) the cross-motion of Harbor House to dismiss ProCentury's claims in admiralty and for sanctions, (3) Cowles & Connell's motion to dismiss Harbor House's third-party complaint, and (4) Century Surety Company and Meadowbrook's motion to dismiss Harbor House's third-party complaint and for sanctions.  Each will be addressed in turn.

## **DISCUSSION**

### A.   **Jurisdiction**

This Court has jurisdiction over this matter pursuant to 28

---

[2]Heist and Tolan have asserted cross-claims against Century Surety, Meadowbrook and Cowles & Connell.  These claims are not the subject of any pending motions.  Heist and Tolan have also not filed any motions with regard to Harbor House's claims against them.

5

U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. ProCentury also alleges that jurisdiction exists in admiralty pursuant to 28 U.S.C. § 1333.

### B.   Standard for Motion to Dismiss

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim.  Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not

whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element"). A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997). The defendant bears the burden of showing that no claim has been presented. Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. Southern

7

Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd., 181
F.3d 410, 426 (3d Cir. 1999).  A court may consider, however, "an
undisputedly authentic document that a defendant attaches as an
exhibit to a motion to dismiss if the plaintiff's claims are based
on the document."  Pension Benefit Guar. Corp. v. White Consol.
Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  If any other
matters outside the pleadings are presented to the court, and the
court does not exclude those matters, a Rule 12(b)(6) motion will
be treated as a summary judgment motion pursuant to Rule 56.  Fed.
R. Civ. P. 12(b).

> **C.   Analysis**
>
> **1.   *ProCentury's motion to dismiss Harbor House's
>       counterclaim and Harbor House's cross-motion to dismiss
>       ProCentury's claims in admiralty and for sanctions***

ProCentury argues that Harbor House's declaratory judgment
counterclaim must be dismissed because it is duplicative of its
declaratory judgment complaint.  It also argues that Harbor House's
bad faith counterclaim must be dismissed because Harbor House has
admitted that it made a material misrepresentation.  Harbor House
objects to the dismissal of its declaratory judgment and bad faith
counterclaims, and contends that it has not admitted that it made a
material misrepresentation.  Harbor House cross-moves for dismissal
of ProCentury's claims sounding in admiralty because even though
the insurance policy covers piers and wharves, Harbor House argues

this is not an admiralty case.  It further argues that sanctions should be imposed on ProCentury for invoking the Court's admiralty jurisdiction.

### a.    Whether the declaratory judgment counterclaim should be dismissed as redundant

ProCentury argues that Harbor House's declaratory judgment counterclaim[3] is redundant of its declaratory judgment claim, and therefore should be dismissed.  A court in the Eastern District of Pennsylvania addressed the same argument.  See University Patents, Inc. v. Kligman, 1991 WL 165071, *1 (E.D. Pa. 1991).  There, the court noted that "[t]here is some authority that when a request for declaratory relief raises issues already presented in the complaint and answer, a counterclaim may be stricken as redundant since a resolution of the original claim will render the request for a declaratory judgment moot."  Id. (citing C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1406, at 32-33 (1990)).  The "complete identity of factual and legal issues between the complaint and the counterclaim" must be clear, however.  Id. (citing Aldens,Inc. v. Packel, 524 F.2d 38, 51-52 (3d Cir. 1975); Wright & Miller, at 36).  In instances where the declaratory relief

_____

[3]ProCentury's declaratory judgment action is brought pursuant to the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.  Harbor House's declaratory judgment counterclaim is brought pursuant to the New Jersey Declaratory Judgment Act, N.J.S.A. 2A:16-50 et seq.  The two declaratory judgment acts are essentially identical.

is based on contract interpretation, courts are reluctant to dismiss a counterclaim for declaratory relief as redundant even when it is a near "mirror image" of the complaint, because a "'ruling adverse to the plaintiff on plaintiff's claim would merely result in a judgment that plaintiff was not entitled to the relief requested; although it might logically follow from that judgment that defendants' interpretation of the contract was the correct one, defendants would not be entitled to a judgment to that effect unless they specifically requested one.'" Id. (quoting Iron Mountain Security Storage Corporation v. American Specialty Foods, Inc., 457 F. Supp. 1158 (E.D. Pa. 1978)).

Here, ProCentury is seeking a "judgment declaring the policy fully rescinded/void *ab initio*" due to Harbor House's breach of its "*uberrimae fidei*"[4] duty and its material misrepresentation.  In contrast, Harbor House is seeking a declaration that ProCentury "unjustifiably asserted that it does not afford coverage [] for the

---

[4]The doctrine of *uberrimae fidei*

imposes a duty of the utmost good faith and requires that parties to an insurance contract disclose all facts material to the risk. If an insured defaults on this duty, the contract may be avoided by the insurer. A party's intent to conceal, or lack thereof, is irrelevant to the *uberrimae fidei* analysis. The only thing that matters is the existence of a material misrepresentation.

AGF Marine Aviation & Transport v. Cassin, 544 F.3d 255, 262 (3d Cir. 2008).

10

damage to Harbor House's Property pursuant to the policy."  Even though both parties essentially ask the Court to declare whether ProCentury is obligated to pay under the policy or not, each party seeks a different declaration to support that end result.  A declaration that ProCentury properly rescinded the policy is different from a declaration that payment is due under the policy. Consequently, because the declaratory relief requested by the parties hinges on different interpretations of the parties' conduct and the terms and obligations of the insurance policy, Harbor House's declaratory judgment counterclaim shall not be dismissed as redundant.

> **b.    Whether Harbor House's bad faith counterclaim should be dismissed**

ProCentury argues that because Harbor House has admitted that it made a material misrepresentation, it cannot claim that ProCentury acted in bad faith.  Specifically, ProCentury contends that because Harbor House admitted in its answer that it hired an engineering firm who was in communications with the Army Corps of Engineers, and that Harbor House answered "no" to the questions on the form application that asked whether structural alterations or demolition exposure were contemplated, Harbor House breached its duty to the insurer to disclose material information.[5]  Because

---

[5]Harbor House disputes whether the *uberrimae fidei* doctrine applies.  As discussed below, the Court cannot yet determine whether this doctrine applies in this case, and, correspondingly,

Harbor House breached this duty, ProCentury argues that it cannot
be held to have acted in bad faith.  Harbor House counters that the
unsigned form application does not constitute an admission as to
the representations contained therein.  Further, Harbor House
argues that its answer admitting that it retained an engineering
firm does not translate into an admission that it knowingly
withheld information from ProCentury or violated any duty to
disclose relevant information with regard to the insured risk.[6]

ProCentury's motion puts the proverbial cart before the horse.
ProCentury argues that under the "fairly debatable standard," there
can be no bad faith claim if the insured cannot show that the
insurance company had no reasonable basis for denying the claim.
Pickett v. Lloyd's, 621 A.2d 445, 454 (N.J. 1993).  Even if this
"fairly debatable standard" were applicable here, an issue the
Court need not determine at this time, ProCentury is effectively
asking the Court to rule on its declaratory judgment action by
declaring that (1) the form application constituted a material
misrepresentation, (2) Harbor House's hiring of the engineering
firm constituted a withholding of relevant information, and based
on this, (3) ProCentury had a reasonable basis for denying the

---

whether admiralty law applies to ProCentury's claim.

[6]The Court notes that Harbor House's briefing relays facts
not contained in its pleadings.  Because the parties' motions are
based on Rule 12(b)(6), the Court will not consider any facts not
contained in the pleadings.

12

claim.  ProCentury, however, has not presented any undisputed facts contained in the pleadings to support such conclusions.  Therefore, without the resolution of the issue of whether ProCentury had a reasonable basis for denying Harbor House's claim, the issue of ProCentury's alleged bad faith cannot be decided.[7]  Consequently, Harbor House's bad faith counterclaim cannot be dismissed on this basis.

### c.   Harbor House's cross-motion to dismiss ProCentury's claims in admiralty and for sanctions

Harbor House cross-moves to dismiss ProCentury's claims in admiralty, arguing that admiralty law does not apply, admiralty jurisdiction is improper, and, as a result, ProCentury should be subject to sanctions.  It argues that even though the insurance policy concerns wharves and piers, maritime contracts, to which admiralty law applies, only concern the transportation of goods by sea.  ProCentury counters that not only is its invocation of admiralty jurisdiction proper, Harbor House did not raise the issue of subject matter jurisdiction in its answer or counterclaim, and any request for sanctions is improper, both substantively and procedurally.

Harbor House's motion is defective for two reasons.  First,

---

[7]ProCentury argues that Harbor House cannot, and has not, alleged that it did not have a reasonable basis to deny coverage. Harbor House's bad faith counterclaim asserts just that.

Harbor House's motion that admiralty law does not apply is postured
in opposition to ProCentury's motion to dismiss Harbor House's bad
faith claim.  Because ProCentury's motion is premature, the Court
does not need to decide whether admiralty concepts should be
applied to the parties' claims.  Any decision now regarding the
applicability of admiralty law would be advisory, and therefore
inappropriate.

Second, even though a challenge to subject matter jurisdiction
can be raised at any time, by the parties or the Court, and subject
matter jurisdiction cannot be waived by failing to assert the issue
in a motion or as an affirmative defense, see Fed. R. Civ. P.
12(h), the issue of admiralty jurisdiction is not dispositive to
subject matter jurisdiction because the parties are properly before
the Court pursuant to diversity jurisdiction, 28 U.S.C. § 1332.  In
order to determine whether subject matter jurisdiction based on
admiralty jurisdiction[8] is proper, it must be determined whether

---

[8]The Supreme Court has explained that "Article III's grant
of admiralty jurisdiction must have referred to a system of law
coextensive with, and operating uniformly in, the whole country.
It certainly could not have been the intention to place the rules
and limits of maritime law under the disposal and regulation of
the several States, as that would have defeated the uniformity
and consistency at which the Constitution aimed on all subjects
of a commercial character affecting the intercourse of the States
with each other or with foreign states."  Norfolk Southern
Railway Co. v. Kirby,  543 U.S. 14, 28 (2004) (internal citations
and quotations omitted).

admiralty law is applicable.[9]  Thus, until the Court determines whether admiralty law applies when that issue is properly joined, any challenge to subject matter jurisdiction on this basis is not yet ripe.

Correspondingly, Harbor House's motion for sanctions for ProCentury's availment of admiralty jurisdiction is similarly unripe.  Only in the event that the Court finds that admiralty jurisdiction is lacking can Harbor House's motion be entertained. Regardless, however, of the Court's ultimate decision on that issue, Harbor House's motion is procedurally deficient.  Rule 11 requires that a sanctions motion be made separately from any other motion, and that it first must be presented to the to-be-sanctioned party 21 days in advance.  Fed. R. Civ. P. 11(c)(2).  Harbor House has not followed these guidelines, and, therefore, its request for sanctions must be denied.

---

[9]There is no "clean line[] between maritime and nonmaritime contracts." Norfolk Southern Railway Co. v. Kirby, 543 U.S. 14, 23 (2004).  The Supreme Court has recognized that "[t]he boundaries of admiralty jurisdiction over contracts-as opposed to torts or crimes-being conceptual rather than spatial, have always been difficult to draw." Id.  "[T]he answer depends upon . . . the nature and character of the contract, and the true criterion is whether it has reference to maritime service or maritime transactions." Id. at 24 (internal citations and quotations omitted).

2. **Cowles & Connell's motion to dismiss Harbor House's third-party complaint**

In its third-party complaint, Harbor House claims that Cowles & Connell was negligent in the issuance of the ProCentury insurance policy. Cowles & Connell served as the insurance agent acting on behalf of ProCentury in accepting the unsigned form application sent to it by Tolan and the Heist Agency. Cowles & Connell moves to dismiss Harbor House's claim, arguing that because it was ProCentury's agent, it owed no duty to Harbor House, and therefore, it cannot be liable to Harbor House. Cowles & Connell also argues that Harbor House's complaint contains insufficient allegations of wrongdoing by it.

Harbor House's claim does not survive Cowles & Connell's motion to dismiss, but only based on Cowles & Connell's second argument. In New Jersey, an insurance broker or agent owes a duty to the insured to act with reasonable skill and diligence in performing the services of a broker. Carter Lincoln-Mercury, Inc., Leasing Div. v. EMAR Group, Inc., 638 A.2d 1288, 1292 (N.J. 1994) (citation omitted). Despite Cowles & Connell's insistence that it did not owe this duty of care to Harbor House because it did not act as Harbor House's broker or agent, New Jersey law provides otherwise. "Our cases clearly recognize that an insurance broker may owe a duty of care not only to the insured who pays the premium and with whom the broker contracts but to other parties found

16

within the zone of harm emanating from the broker's actions as well." Carter Lincoln-Mercury, 638 A.2d at 1297-98 (citations omitted) (explaining that cases supporting this conclusion "proceed from a finding that the plaintiff was a foreseeable injured party and that considerations of fairness, including the broker's ability to prevent the harm, made appropriate recognition that the broker owed a duty of care to a third party").  Under these standards, not only could Cowles & Connell be liable to Harbor House because of its general duty as an insurance agent to act with reasonable skill and diligence in facilitating Harbor House's purchase of the ProCentury policy, it alternatively could be liable to Harbor House because it may be in the "zone of harm emanating" from its conduct.  Thus, Harbor House's claim does not fail simply because Cowles & Connell did not have a direct relationship with Harbor House or owed duties to others.

While New Jersey law does, in general, allow someone not in direct privity with an agent or broker to maintain such a claim, Harbor House has not sufficiently pleaded its claim under Twombly/Iqbal.  The relationship of broker to insured may be described as contractual, but an insured does not sue on a contract of insurance - rather the claim asserted is based on the broker's negligent failure to procure the appropriate coverage.  Carter Lincoln-Mercury, 638 A.2d at 1291-92 (citation omitted).  A plaintiff can establish a prima facie case of negligence against a

broker if: (1) the broker neglects to procure the insurance; (2) the broker secures a policy that is either void or materially deficient; or (3) the policy does not provide the coverage the broker undertook to supply.  <u>President v. Jenkins</u>, 853 A.2d 247, 257 (N.J. 2004).  But even that broad duty requires some articulation of the duty owed in these circumstances and how, as a factual matter, it was breached.

Here, Harbor House has alleged that Cowles & Connell, acting as ProCentury's insurance agent, issued the policy negligently by "failing to provide the necessary and correct information, failing to ascertain the true nature of the risk, failing to make proper inquiry or to explain the coverages afforded, and in failing to act in accordance with the standard of conduct for insurance agents and brokers performing such services in the District of New Jersey." (Third Party Compl. ¶ 28.)  Under the previous, more permissive pleading standard, this claim may have been sufficient.  <u>See</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957); <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 562-563 (2007) ("On such a focused and literal reading of <u>Conley's</u> 'no set of facts,' a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery.").

However, under the current, more stringent pleading standard articulated by the Supreme Court in <u>Twombly</u>, and reiterated in

18

Iqbal, Harbor House's claim fails.  Harbor House's claims are
asserted collectively against Cowell & Connell, Heist and Tolan,
and except in the most general sense nowhere in Harbor House's
complaint does it articulate what particular duty Cowell & Connell
had to Harbor House in this situation but more importantly how it
failed to fulfill that duty.  While there appears to be enough
facts pled with regard to the claim against Heist and Tolan to meet
the factual specificity requirement of Twombly and Iqbal,[10] there
is no specific allegation of - in defendant's words - "wrongdoing"
by Cowles & Connell.  Instead, completely ignoring their respective
and differing roles as agents for the insurer and insured, Harbor
House simply lumps the two agents together with no factual
allegation directed at Cowles & Connell.  Under such circumstances,
the defendant - and the Court - is left to guess as to what Cowles
& Connell could have done differently to prevent ProCentury from
rescinding the insurance policy.[11]  Stating a viable "claim

---

[10]The complaint alleges in essence that Heist and Tolan
submitted an unsigned application using the form of another
uninvolved insurance company and "made certain representations
concerning the nature and extent fo the risk... ." Third Party
Complaint, ¶ 10.

[11]In its opposition brief, Harbor House describes Cowles &
Connell's "failure to accept a policy application proper in form
and content" as the basis for its claim, in essence the passive
mirror image of its allegations against Heist and Tolan that they
actively submitted an improper application.  However, it is
difficult to make sense of such a claim except to re-state it as
a claim that Cowles & Connell somehow had a duty to reject or
question the application submitted by Heist and Tolan on behalf
of Harbor House.  While we recognize the general duty of care

requires a complaint with enough factual matter (taken as true) to suggest the required element." Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (discussing Twombly); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997) (stating that a complaint needs to contain more than "bald assertions" and "legal conclusions"). Harbor House's claim against Cowles & Connell fails to make these most basic of factual assertions, relying on instead on assertions made against others and bald formulaic legal conclusions without any corresponding articulation of how those principles or duties apply in this case. Twombly and Iqbal require more. Accordingly, Cowles & Connell's motion to dismiss must be granted.[12]

---

that agents and brokers owe insureds, we know of no duty owed by the agent of a seller of insurance to the buyer of insurance and its agent to accept only a particular form of application for insurance or any affirmative duty to make additional inquiry in the face of a simple unequivocal representation by the insured's agent. Nor has Harbor House explained how the use of a different form would have changed its own representation. The sole allegation against Cowles & Connell appears to be is that it passively accepted the insurance application submitted by Heist and Tolan and the representation contained in it that Harbor House planned no alterations to the covered structures. Whatever liability Harbor House's agent may have for that representation if proven materially false, Harbor House has offered no authority, and our independent research has found none, that a third party's passive receipt of the plaintiff's own representation could amount to a breach of the general duty of care.

[12]Harbor House's claim against Cowles & Connell is dismissed without prejudice.

3. ***Century Surety Company and Meadowbrook Insurance Group, Inc.'s motion to dismiss Harbor House's third-party complaint and for sanctions***

Harbor House also filed third-party claims against Century Surety Company and Meadowbrook Insurance Group, Inc. because Century Surety "participated in the issuance of the policy to Harbor House as set forth in the Declarations Page for the piers and wharves coverage issued to Harbor House," and Meadowbrook, "as Successor In Interest to Pro[C]entury, is responsible for the acts and omissions of its predecessor, Pro[C]entury." (Third Party Compl. ¶¶ 20-21.) Harbor House also claims that these defendants acted in bad faith and in violation of the "Unfair Claims Settlement Practices Law" and the "Unfair Insurance Practices Law of the State of New Jersey."[13] (Id. ¶ 24.)

Century Surety and Meadowbrook seek dismissal of these claims, arguing that the corporate structure of ProCentury, Century Surety, and Meadowbrook is irrelevant and does not vest Harbor House with any causes of action against Century Surety and Meadowbrook. They also argue that there is no private cause of action under the Unfair Claims Settlement Practices Act. These defendants also seek sanctions against Harbor House for asserting these claims.

---

[13]It is unclear what Harbor House refers to as the "Unfair Insurance Practices Law of the State of New Jersey." (Third-Party Compl. ¶ 24.) There is no statute by that name in New Jersey.

With regard to the corporate structure, Harbor House submits an internet printout from ProCentury Corp.'s[14] "profile," upon which it bases its claims, that states, "ProCentury Corp. . . . markets and underwrites insurance products. . . . Most operations are conducted through subsidiary, Century Surety Company. . . . In 2005, it acquired an admitted company, giving it the capacity to expand and enter new markets that require admitted status.  The new subsidiary, ProCentury Insurance Company, is a strategic component to Century Surety Company and gives it flexibility to offer insurance solutions to a larger segment of the specialty insurance market."  (Harbor House Opp. ¶ 4, Ex. A.)  Harbor House also submits an internet printout which provides that in July 2008, Meadowbrook acquired ProCentury Corp.  (Id. ¶ 8, Ex. A.)  Based on this information, Harbor House asserted its third-party claims against Century Surety and Meadowbrook.  Harbor House also asserted its claims against Century Surety because its name appears on the heading of the declarations page of the policy issued to Harbor House.

In response, Century Surety and Meadowbrook argue that as a matter of law a parent corporation is not liable for the contractual obligations of its subsidiary, and that they owe no obligations to Harbor House, because if they did, they would have

---

[14]ProCentury Corp. appears to have been the parent company of ProCentury Insurance Company prior to Meadowbrook's acquisition of ProCentury Corp.

joined in on ProCentury's declaratory judgment action.  They
further state that even though Century Surety's name appears on the
declaration page of the policy, it is not the insurer and not a
party to the contract of insurance.  Century Surety and Meadowbrook
have provided no evidence, other than the unsupported statements in
their brief, to confirm that the corporate structure does not
support Harbor House's claims against them.  This is insufficient
on a motion to dismiss based on Rule 12(b)(6).

With regard to Century Surety, Harbor House has alleged facts
- namely, that Century Surety's name appears on the declarations
page of the policy, and that ProCentury Insurance Company is the
"strategic component" to Century Surety - that "raise a reasonable
expectation that discovery will reveal evidence" to support Harbor
House's claim.  Phillips v. County of Allegheny, 515 F.3d 224, 234
(3d Cir. 2008) (discussing Twombly).  Stated differently, there
appears to be a sufficient factual allegation, and sufficient
underlying facts to support the truth of the allegation, that
Century Surety joined with ProCentury in issuing the contested
policy.  Whether that allegation is eventually proven or legally
sufficient will be left to discovery and future motion practice.
For now, Harbor House's claims against Century Surety survive its
motion to dismiss.

With regard to Meadowbrook, its basis for dismissal is
similarly unavailing - unsupported protestations regarding the

23

corporate structure are insufficient to support a Rule 12(b)(6)
motion in the face of a complaint that taken as true, as we must in
the present procedural posture, pleads sufficient facts to
establish successor corporation liability.[15]  The Court notes,
however, that it appears from the additional materials submitted to
the Court in conjunction with the instant motions that the factual
allegations supporting Harbor House's claim against Meadowbrook may
not be true.  Harbor House filed its third-party complaint against
Meadowbrook as "successor-in-interest" to ProCentury Insurance
Company.  This presumes that Meadowbrook purchased the insurance
subsidiary directly and that ProCentury no longer exists.  The very
documents that Harbor House submitted which purportedly formed the
basis of its complaint against Meadowbrook and other documents in
this case, however, tell a different story.  First, it appears that
Meadowbrook, which appears to be a holding company, purchased
ProCentury Corp., a holding company of insurance companies, not
ProCentury Insurance Company.  The difference is likely
meaningful.[16]

---

[15]Here, that specific allegation is that Meadowbrook
purchased the original plaintiff ProCentury (i.e. ProCentury
Insurance Company) and became its legal successor-in-interest.
Assuming a valid claim against an acquired and dissolved firm, in
general a claim would lie against the successor corporation.

[16]We recognize that the purchase of the holding company
brought with it all of the holding company's assets.  But
becoming the new owner of a corporate entity is not the same
thing as becoming its successor-in-interest.  It appears that
Meadowbrook stepped into ProCentury Corp.'s shoes, not those worn

24

Second, ProCentury, now presumably a subsidiary of Meadowbrook, still exists.  Indeed it must still exist and have legal capacity as it is the plaintiff in the action that commenced this litigation.  Thus, it appears that Meadowbrook is not a successor-in-interest to ProCentury Insurance Company at all, which is the entity that issued the insurance policy in dispute.[17]

The Court's observations of the corporate structure are not sufficient to grant Meadowbrook's motion since it relies on matters outside the pleadings from both sides.  Without more, Meadowbrook's motion must be denied.  If Meadowbrook continues to contest its presence in the case with regard to the corporate structure issues, the Court directs Meadowbrook to file a motion for summary judgment, complete with supporting affidavits, so that it will not be constrained by the limits of Rule 12(b)(6).[18]

---

by ProCentury Insurance Company.

[17]Moreover, since a parent corporation is not, absent an alter ego allegation not present here, responsible for the liabilities of its subsidiaries, Meadowbrook is no more responsible for ProCentury's liablilities than was ProCentury Corp.

[18]The parties are directed to consult prior to the submission of any such motion to attempt to determine whether Meadowbrook should remain as a third party defendant in this action.  If Harbor House continues to assert that Meadowbrook should remain as a defendant in this case and has a factual and legal basis for such an assertion if may, and should, oppose any summary judgment motion subsequently filed.  If on the other hand, it has no factual or legal basis to assert the successor-in-interest theory presently advanced or fails to offer a viable substitute theory, it has an obligation to dismiss Meadowbrook as a defendant.  If instead Harbor House opposes any future motion frivolously,

Next, with regard to the substance of Harbor House's claims, Harbor House concedes that there is no private cause of action under the Unfair Claims Settlement Practices Act, N.J.S.A. 17:29B-4(9).  See Pierzga v. Ohio Cas. Group of Ins. Companies, 504 A.2d 1200, 1204 (N.J. Super. Ct. App. Div. 1986).  Harbor House contends that Count II of its third-party complaint asserts a claim for common law bad faith, and it simply references the UCSPA because the Act provides guidelines for determining whether an insurer has acted in bad faith.  See Pickett v. Lloyd's, 621 A.2d 445, 450-51 (N.J. 1993) (explaining that "the New Jersey Legislature has defined the relationship between insurance companies and insureds by promulgating a broad range of statutory provisions.  For example, N.J.S.A. 17:29B-1 to -14 regulates the insurance trade by defining and prohibiting unfair practices"); Williams v. State Farm Indem. Co., 2009 WL 112753, *1 (N.J. Super. Ct. App. Div. 2009) (citing N.J.S.A. 17:29B-4(9)for examples of unfair insurance practices).

To the extent that Harbor House's complaint can be construed as asserting a cause of action under the UCSPA, it is dismissed. Harbor House's common law bad faith claim against Century Surety and Meadowbrook may proceed unless these defendants have another basis for dismissal, or until Century Surety and Meadowbrook file a motion for summary judgment as to the corporate structure issues.

_____

Meadowbrook may renew its motion for sanctions.

As for Century Surety and Meadowbrook's request for Rule 11 sanctions because Harbor House refused to dismiss them as defendants, its request is as procedurally deficient as Harbor House's request for sanctions against ProCentury.[19]  Even though these defendants communicated with Harbor House regarding what they deem to be unmeritorious claims against them prior to filing their request for sanctions, they did not advance their Rule 11 request in a separate motion as required by the Rule.  Fed. R. Civ. P. 11(c)(2).  Substantively, ProCentury's motion is unavailing as to Century Surety because Harbor House has alleged sufficient facts to support a claim against Century Surety.  In contrast, Harbor House's claim against Meadowbrook may be substantively frivolous. In order for the Court to consider any Rule 11 motion with regard to Harbor House's claims against Meadowbrook, however, Meadowbrook must follow Rule 11's procedural guidelines, of which Meadowbrook is aware since it previously pointed out Harbor House's deficiencies in this regard.  Consequently, defendants' request for sanctions must be denied.

## **CONCLUSION**

For the reasons expressed above, the motions of ProCentury, Harbor House, and Century Surety and Meadowbrook will be denied,

---

[19]ProCentury, Century Surety, and Meadowbrook are represented by the same counsel.

and the motion of Cowles & Connell will be granted.  An appropriate Order will be entered.


Date: August 19, 2009                    s/ Noel L. Hillman

At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.